Atkinson, J.,
delivered the opinion of the court:
The claimant entered into the contract with the United States November 20, 1899, for the excavation of a channel 200 feet -wide and 21 feet deep at mean low-water mark in Wilmington Harbor and Christiana River, Delaware, described in the thirty-seventh paragraph of the specifications, which contract ivas amended by a supplemental agreement dated June 21, 1901, increasing the quantity of material to be dredged and extending the time for the completion of the work. The contractor was to receive 10$ cents per cubic yard for the material removed and deposited as provided in the contract! The amount of material removed was to be determined by measurements or surveys made before the dredging operations were commenced and also after they were completed. The measurements and surveys necessary to determine the quantity were to be made by the engineer in charge, or by persons employed by him for that purpose, and the decision of the engineer in charge as to the amount of material excavated and removed was to be final and without appeal on the part of the contractor.
Before entering upon the performance of the contract the claimant called upon the engineer in charge for information *227 witli reference to the manner and method of making the measurements in question, asking specifically whether or not it was the intention of the engineer in charge to include in the material to be paid for “ slope measurements.” , The engineer in charge duly advised the contractor that in measuring the material to be paid for no account would be taken of the material dredged from outside the designated lines of excavation, and further that in measuring the material to be removed the channel Avould be treated as a prism with vertical sides and horizontal bottom, and that these vertical sides would be regarded as the “ designated lines of excavation.”
Upon receipt of this information the. contractor filed a written protest with the engineer in charge before entering upon the execution of the contract, and subsequently, at the date of each payment for services performed, protest was duly entered on the ground that the payments so made did not include material from outside the designated lines of excavation as above defined.
Claimant alleges that in the process of the execution of the contract it actually dredged and removed material from the sides of the channel outside of the vertical lines thereof to the amount of 260,430 cubic yards, for which it claims it was entitled to compensation under the contract at the contract price of 10$ cents per cubic yard.
The defendants contend that they were not obligated by the terms of the contract to pay the contractor anything for material outside of the vertical sides of the channel to be cut, or below the bottom thereof at the required depth, even though the same was actually and necessarily dredged and deposited by the contractor. In other words, that the material to be excavated was to be “measured in place.”
This suit, therefore, hinges on the phrase “measured in place." Section 43 of the specifications, which are made a part of the contract, reads:
“ 43. The amount of material removed will be paid for by the cubic yard, measured in place, and- shall be determined by surveys made before dredging is commenced and after it is completed. All surveys and measurements are to be made under the direction of the engineer in charge by persons employed by him for that purpose. The decision of the engi *228 neer in charge as to the amount of material excavated and removed, as well as to its location and deposit, shall be final and without appeal on the part of the.contractor.”
The decision of the engineer in charge in respect of the quantity of material to be paid for is contained in his letter, set out in finding v, xvherein he says:
“ Payment will be made for the quantity of material removed within the designated lines of excavation as determined by measurement before and after the dredge, and that such measurement does not include material which comes in from the sides during the progress of dredging.
“ I deem it proper to add that this is in conformity with the instructions received from the Chief of Engineers on the subject.”
The claimant contends that because the engineer in charge submitted the question to the Chief of Engineers and then advised the claimant that his decision was in conformity with the instructions of that officer, therefore it was not the decision of the engineer in charge. The language of the specification, “ The decision of the engineer in charge as to the amount of material excavated and removed, as well as to its location and deposit, shall be final and without appeal on the part of the contractor,” entitled the claimant to the decision of that officer, but he was not thereby inhibited from seeking information from his superior officer upon which to base his decision, provided only after he obtained such information the decision rendered ivas his own. We think the findings' show that it was, notwithstanding the statement that the decision was in conformity with the instructions of the Chief of Engineers on the subject. The decision being in conformity with such instructions adds force to the ruling, as b}f the language it does not appear that such instructions were not also in harmony with the decision of the engineer in charge. That is to say, from the facts found the court can not conclude that the decision was not that of the engineer in charge, and if not, then the claimant had the benefit of the decision of the engineer in charge in respect of the quantity of material to be paid for, and such decision, it must be held, was final, unless clearty in violation of the terms of the contract.
*229 Referring to the specifications, which are made part of the contract, paragraph 43, quoted above, provides that: “The amount of material removed will be paid for by the cubic yard measured in place,” such amount to be determined under the directions of the engineer in charge, “ by surveys made before dredging is commenced and after it is completed.”
Here we have the method by which the quantity of material to be excavated is determined, as well as the method of verifying the amount of material removed after the dredging is completed.
Paragraph 45 of the specifications provides that: “ The location of the work shall be plainly located by stakes and ranges; ” and in order that there should be. no mistake about the location from the beginning to the end of the work, the same paragraph continues: “ The level of mean low water as established by the engineer in charge shall not be changed during the progress of the work; ” and then, as if to make it still clearer what was meant by “ measurement in place,” paragraph 44 provides:
“ Payments will be allowed for actual dredging to 21 feet below mean low-water level. Work done outside of the designated lines of excavation or below the specified depths will not be paid for.”
Keeping in mind that the amount of material to be paid for was to be determined within the designated lines by means of surveys made before -dredging commenced and verified within those lines after the dredging was completed, makes it clear that the measurements made were not to include any material outside of the designated lines. It necessarily follows that the material falling within the designated lines from the sides or slopes outside of the designated lines during the progress of the work, could not have been measured in place by the surveys so authorized by the contract to bo made.
We are therefore of the opinion that the specifications, which are made part of the contract, are plain and unambiguous, and that they not only furnish the basis' of measurement in place of the material to be excavated, but that the measurements made by the engineer in charge were in strict *230 accord therewith. This being so, any other method of measurement m place, even though customary, is excluded by the terms of the contract, and therefore expert testimony is not admissible to explain language that needs no explanation.
Nor is the claimant excused for the failure of its officers and agents to familiarize themselves with the project and the work to be done before making its bid and entering into the contract, for, at the time of making its bid, there were in the office of the engineer, in addition to the specifications, drawings showing the location of the proposed channel by various lines drawn thereon, as set forth in finding n; and by paragraph 32 of the specifications bidders were expressly notified that they would be “ expected to examine the drawings,” and they were therein “ invited to make the estimate of quantities for themselves; ” while by paragraph 37 the amount of materials to be removed was estimated at 900,000 cubic yards.
The attention of the claimant’s officers and agents being called to the drawings by the terms of the specifications, it was their duty to have examined such drawings before making their bid; and if they failed so to do, it was, so far as appears from the findings of fact, their'own fault. Had they exercised reasonable foresight in response to the advertisement and the specifications containing-directions to bidders, they could readily have ascertained from the drawings that the material estimated did not include any material outside of the lines indicated thereon as provided by the specifications.
It follows from what we have said that the claimant is not entitled to recover, and its q>etition is therefore dismissed.